IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JOE EDWIN ASHCRAFT                                                                          PLAINTIFF

        v.                              Civil No. 10-3081

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                             DEFENDANT

**MEMORANDUM OPINION**

I.      **Factual and Procedural Background**

Plaintiff, Joe Edwin Ashcraft, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to 42 U.S.C. § 405(g).

Plaintiff protectively filed his DIB and SSI applications on March 30, 2007, alleging a disability onset date of March 1, 2006, due to degenerative disc disease in his cervical spine, hypertension, depression, numbness in his left arms and legs, decreased grip in his left hand, and chest pain.  Tr. 30, 168, 205.  At the time of the onset date, Plaintiff was forty nine years old with a high school education.  Tr. 27, 71, 173.  He has past relevant work as a police officer and a security officer.  Tr. 27-29, 71, 135-142, 169, 203-204.

Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 74-80, 83-86.  At Plaintiff's request, an administrative hearing was held on September 3, 2008.  Tr. 19-55.  Plaintiff was present at this hearing and represented by counsel.  Tr. 19-55.  The Administrative Law Judge ("ALJ") rendered an unfavorable decision on December 5, 2008, finding that Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. 60-73.  Subsequently, the Appeals

Council denied Plaintiff's Request for Review on July 20, 2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

## II.     Medical History

Plaintiff has a history of mild coronary artery disease, chest pain, hypertension, and hypercholesterolemia, and has undergone several heart catherizations.[1] Tr. 260-329, 339-349, 369-396, 452-460. Plaintiff was treated with nitrates, aspirin, and beta blockers. Tr. 261. He continued to smoke against the advice of his physicians. Tr. 263, 280, 295-299, 348-349, 404, 409.

Plaintiff was treated by George S. Boyle, M.D., a cardiologist. Tr. 397-428. In 2001, Dr. Boyle noted that Plaintiff's coronary artery disease was relatively stable and appeared more subjective than objective. Tr. 416. In 2002, Dr. Boyle noted that Plaintiff had a history of noncompliance and had stopped taking his oral medication. Tr. 409. An EKG showed normal sinus rhythm. Tr. 209. In August 2005, Dr. Boyle noted that Plaintiff had a history of chest pain, borderline, coronary artery disease, elevated cholesterol, hypertension, and tobacco use. Tr. 404. Dr. Boyle noted that Plaintiff's chest pain usually occurred at rest and with increased stress, but was relieved with nitroglycerine. Tr. 404. At this time, Plaintiff's blood pressure was 150/88. Tr. 404. His chest was clear and his heart had regular rhythm without murmur, gallop, or click. Tr. 404. Dr. Boyle noted that Plaintiff had near normal coronaries in the past and his symptoms were possibly due to spasm versus psychological issues. Tr. 404. He scheduled Plaintiff for a stress test and strongly encouraged him to quit smoking. Tr. 404. Plaintiff did not appear for his stress test. Tr. 402-403.

---

[1] Many of Plaintiff's medical records are far outside the relevant time period. Although these records were reviewed for context, only a brief overview is provided in this opinion.

Plaintiff was treated for depression and chest pain by Crystal Broussard, M.D. Tr. 441-444. In August 2005, Dr. Broussard noted that Plaintiff was chest pain free, but recommended a beta blocker and aspirin. Tr. 444. Clinic notes also reveal that Plaintiff experienced slight improvement on Zoloft, which he had been taking for two weeks. Tr. 441.

Plaintiff also has a history of neck and back pain. Tr. 357-360, 434-466. An MRI of Plaintiff's cervical spine, dated August 22, 2005, revealed multilevel degenerative disc disease from C3-4 through C6-7, with the worst levels being from C4-5 through C6-7, and multilevel neural foraminal stenosis, worse at C6-7, with moderate bilateral neural foraminal stenosis due to uncovertebral joint hypertrophy. Tr. 434-436, 439.

In January and March 2007, Plaintiff presented to Baxter Regional Medical Center after falling and injuring his neck and back. Tr. 218-227. Plaintiff reported pain in his neck, lumbar spine, and tingling and weakness in his left arm. Tr. 226. On examination, he exhibited tenderness with palpation of the paraspinous muscles in the lower cervical region and over the left shoulder, but no step-offs were noted. Tr. 226. He also exhibited tenderness over the lumbar spine, with no noted contusions or bruises. Tr. 226. X-rays and a CT of Plaintiff's cervical spine revealed degenerative changes with anterior osteophytes at multiple levels, but no fracture, subluxation, or dislocation was seen. Tr. 218, 243, 249, 251, 461, 463. X-rays of Plaintiff's lumbar spine revealed degenerative changes with some anterior osteophytes, but no acute fracture or subluxation. Tr. 250, 462.

Plaintiff received routine care at Mountain Home Christian Clinic ("MHCC"). In April 2007, Plaintiff complained of severe neck and back pain and numbness in his left arm. Tr. 248. He stated he wanted disability documentation and physical therapy for pain relief. Tr. 248. On examination, Plaintiff had decreased range of motion in his lumbar and cervical spine in all planes. Tr. 253. He

had muscle spasms in the paraspinal area with radiculopathy and numbness at L4 and decreased joint spacing in his cervical and lumbar spine. Tr. 253. Plaintiff was assessed with severe degenerative joint disease and educated on coping strategies and anti-inflammatory medication. Tr. 253.

On June 12, 2007, Plaintiff saw K. Simon Abraham, M.D., for a consultative physical evaluation. Tr. 227-233. On examination, Plaintiff experienced chest pain on exertion, but no shortness of breath. Tr. 228. Plaintiff reported that he experienced chest pain with exercise, rest, or mental stress, but that it occurred once every two months and was relieved with nitroglycerin spray in about two to three minutes. Tr. 228. Plaintiff's lung and heart sounds were normal. Tr. 230. He had limited range of motion of his cervical spine on extension, but had normal range of motion on flexion and rotation. Tr. 230. He had normal range of motion in his lumbar spine and full range of motion in his shoulders, elbows, wrists, hands, hips, knees, and ankles. Tr. 230. Plaintiff was neurologically intact, with normal reflexes and no muscle weakness or atrophy. Tr. 231. He was able to hold a pen and write, touch his fingertips to his palm, oppose his thumb to his fingers, pick up a coin, stand and walk without assistive devices, walk on his heels and toes, and squat and arise from a squatting position, but grip strength in his left hand was limited to 80%. Tr. 231. Plaintiff had a normal pulse in his lower extremities, with no evidence of edema. Tr. 232. Dr. Abraham assessed Plaintiff with degenerative disc disease and degenerative joint disease of the cervical spine with radiculopathy, degenerative joint disease of the lumbar spine, atypical chest pain, and hypertension. Tr. 233. He noted that Plaintiff was capable of performing all aspects of physical examination, but had limitation of movement of his cervical spine and x-ray findings consistent with degenerative disc disease and degenerative joint disease at C4-C7, which probably needed surgical alteration. Tr. 233.

In a Physical Residual Functional ("RFC") Assessment dated June 14, 2007, Jerry Mann, M.D., found that Plaintiff could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds, stand/walk/sit for about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 235-241. He found no postural, visual, communicative, or environmental limitations, but noted that Plaintiff was limited in his reaching ability and could perform medium work with only occasional overhead use of his left upper extremity. Tr. 237-241.

A CT of Plaintiff's cervical spine dated August 14, 2007, revealed degenerative spondylosis with a posterior disc osteophyte complex, most pronounced at C6-C7, and smaller posterior disc osteophyte complexes at C4-C5 and C5-C6. Tr. 450, 464.

In September 2007, Plaintiff presented to MHCC with complaints of neck pain and left-sided weakness. Tr. 467. Kevin Adkins, M.D., prescribed a course of Prednisone for Plaintiff's neck pain and strongly encouraged him to quit smoking and drinking sodas to prevent "continued deterioration of the bone known to be caused by both." Tr. 467. Dr. Adkins also recommended that Plaintiff obtain further evaluation and treatment of his neck through a neurosurgeon at University of Arkansas for Medical Sciences. Tr. 467. In November 2007, Plaintiff was prescribed Prozac for depression. Tr. 470. At a follow-up appointment, Plaintiff was "doing better." Tr. 471. On May 12, 2008, Plaintiff was still depressed, but was doing better. Tr. 474. He also stated that his neck collar had helped. Tr. 474. From June 2007 through May 2008, Plaintiff was prescribed Chantix, Enalapril, Flexeril, Nexium, Prozac, Toprol XL, Trazodone, Tricor, and Ultram. Tr. 476.

On June 30, 2008, Paul Wilbur, M.D., Plaintiff's physician at MHCC, completed a Medical Source Statement ("MSS") in which he found that Plaintiff was capable of handling a job in a competitive work situation that required sitting for as much as six hours in an eight-hour day and

standing/walking for as much as two hours in an eight-hour workday, but would require some unscheduled breaks and the ability to shift positions at will. Tr. 217. He also noted that Plaintiff pain or other symptoms would often interfere with the attention and concentration needed to perform even simple work tasks and his impairments would cause good and bad days. Tr. 217, 479.

### III.     Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   Discussion

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since March 1, 2006, the alleged onset date. Tr. 65. At step two, the ALJ found that Plaintiff suffered from degenerative disc disease, osteoarthritis of the cervical spine, and essential hypertension, which were considered severe impairments under the Act. Tr. 65-66. At step three, she determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 67. At step four, the ALJ found that Plaintiff had the RFC to perform light, unskilled work, except that he could frequently lift/carry ten pounds and occasionally twenty pounds, sit for six hours in an eight-hour workday, stand/walk for six hours in an eight-hour workday, occasionally reach overhead with his left upper extremity, and frequently reach, handle, and finger with his left upper extremity. Tr. 68-71. Based on this RFC assessment, the ALJ determined that Plaintiff could not perform his past relevant work. Tr. 71.

After eliciting vocational expert testimony, the ALJ determined there were light, unskilled jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as bar attendant, of which there are 161,000 jobs nationally and 476 jobs locally, storage facility rental clerk, of which there are 19,500 jobs nationally and 158 jobs locally, and photo counter clerk, of which there are 19,537 jobs nationally and 158 jobs locally. Tr. 71-72. Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, at any point from March 1, 2006, through December 10, 2008. Tr. 72-73.

On appeal, Plaintiff contends the ALJ erred by: (1) failing to afford proper weight to the opinions of his treating physician; and (2) failing to properly evaluate his subjective complaints of pain. *See* Pl.'s Br. 2-7.

Dr. Wilbur's MSS

A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

Plaintiff contends the ALJ erred in failing to discuss the weight given to Dr. Wilbur's MSS. *See* Pl.'s Br. 2-4. Defendant argues this evidence was not submitted until after the ALJ rendered his decision and, as such, he was under no obligation to discuss it. *See* Def.'s Br. 4-6.

Notes from the administrative hearing reveal that the ALJ entered Exhibits 1A through 13F into the record. Tr. 23. Dr. Wilbur's MSS is contained in Exhibit 14F and was only made available in connection with Plaintiff's Request for Review. Tr. 212-217, 479. Plaintiff referred to Dr. Wilbur's MSS in his pre-hearing memorandum, which was faxed to the ALJ following the administrative hearing, but the memorandum simply summarized Dr. Wilbur's findings without providing actual documentation or Dr. Wilbur's signature. Tr. 205, 210-211.

Although the court agrees with Defendant that an ALJ is under no obligation to discuss a medical opinion mentioned in the pre-hearing memorandum but not offered as an exhibit, the circumstances here confirm that the ALJ was fully aware of Dr. Wilbur's MSS, as he included Dr. Wilbur's limitations in a hypothetical posed to the VE. Tr. 23-24, 53-54. In response to this hypothetical, the VE testified that no jobs would be available. Tr. 53-54. Under these circumstances, especially when the record contains no other MSS or RFC assessments from a treating or examining physician, the undersigned finds that the ALJ should have discussed Dr. Wilbur's MSS in his opinion and explained what weight, if any, he attached to those findings. *See Terry v. Barnhart*, 82 Fed. Appx. 499, 500 (8th Cir. 2003) (ALJ failed to discuss or even mention treating physician's opinion concerning claimant's restrictions). For these reasons, remand is necessary for further consideration of Plaintiff's limitations.

## V.     **Conclusion:**

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should consider Dr. Wilbur's opinion and explain what weight, if any, is attached to it.

DATED this 4th day of August 2011.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE